# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEVIN J. RHODES**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-746** |
| **GENESIS MARINE, LLC OF DELAWARE,**<br>    **Defendant** | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court is a Motion *in Limine*, filed by Defendant Genesis Marine, LLC of Delaware ("Genesis"), to exclude the proffered testimony of Plaintiff's expert marine engineer, John Tylawsky, and expert economist, Kenneth McCoin.[1] Plaintiff Kevin Rhodes opposes this motion.[2] Genesis filed a reply.[3] On July 11, 2019, the Court ruled, in part, with respect to McCoin, that he "will not be allowed to testify: (1) that Plaintiff's annual wages would increase by 0.8% annually throughout his worklife expectancy or (2) with respect to the costs of household services."[4] For the reasons that follow, Genesis's motion to exclude the testimony of Tylawsky is **DENIED**.

## BACKGROUND

Plaintiff Kevin Rhodes alleges he was injured on June 23, 2017 while working as a marine electrician for his employer, Complete Marine Services, LLP ("Complete Marine"), aboard the Genesis Barge 11103, which is owned by Defendant Genesis.[5] The parties agree Plaintiff is a longshoreman, not a seaman,[6] and the Genesis Barge 11103 is an inspected

---

[1] R. Doc. 69.
[2] R. Doc. 86.
[3] R. Doc. 101.
[4] R. Doc. 109.
[5] R. Doc. 1. at ¶ III.
[6] R. Doc. 107 (Pre-trial Order) at 12 (Uncontested Material Facts) ("On June 23, 2017, Kevin Rhodes was a worker covered under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq,*.")

1

vessel.[7] At the time of the alleged incident, the Genesis Barge 11103 was undergoing repairs performed by Defendant Bollinger at Bollinger's dry dock facility in Amelia, Louisiana.[8] As part of the repair work, Genesis contracted with Complete Marine to install electrical systems related to a new ballast water treatment system.[9] Because the ballast water treatment system was to be installed below the deck of the barge, to perform his work Plaintiff had to descend a ladder to access the lower level of the barge.[10]

"In order to access and descend the ladder, Plaintiff had to remove a grated opening to enter the bilge of the barge. The opening consisted of a cut-off piece of the grating."[11] To go through the opening, Plaintiff had to place the piece of grating (hereinafter the "hatch cover") on the deck.[12] Only then could Plaintiff descend the ladder. Once he cleared the entrance, Plaintiff had to reposition the hatch cover over the access hole.[13] On the date of the incident, as Plaintiff attempted to reposition the hatch cover, "it got snagged on welding lead cables that were laid out across the walkway by employees of Defendant, Bollinger" and the hatch cover fell into the hole.[14] Plaintiff pushed himself back from the ladder to avoid being struck by the hatch cover.[15] Plaintiff fell off the ladder, sustaining various bodily injuries.[16] Plaintiff filed this action against Genesis and

---

[7] *Compare* R. Doc. 69-1 at 5 (describing Genesis Barge 11103 as "United States Coast Guard inspected vessel") (citing R. Doc. 69-7, United States Coast Guard Certificate of Inspection dated February 2, 2015) *with* R. Doc. 86 at 4-6 (describing Genesis Barge 11103 as an "inspected vessel").
[8] R. Doc. 1. at ¶ III.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

Bollinger on January 24, 2018, bringing "negligence" and "vessel negligence" causes of action against Genesis and a "negligence" cause of action against Bollinger.[17]

Plaintiff retained Tylawsky to render a report as a marine engineer and liability expert.[18] Genesis seeks to exclude Tylawsky's testimony under Federal Rule of Evidence 702, and argues two bases for exclusion. First, Genesis argues Tylawsky's testimony is unreliable because he considered OSHA regulations—rather than U.S. Coast Guard rules—in reaching his opinions.[19] Second, Genesis argues Tylawsky's testimony is not based on sufficient facts or data because Tylawsky "fails to consider any depositions, including that of plaintiff, in formulating his conclusory opinions."[20]

## LAW AND ANALYSIS

Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[21]

Courts, as "gatekeepers," are tasked with making a preliminary assessment whether expert testimony is both reliable and relevant.[22] The Court has broad latitude in making such expert testimony determinations.[23] The party seeking to offer expert

---

[17] *See* R. Doc. 1.
[18] R. Doc. 107 at 29.
[19] R. Doc. 69-1 at 5.
[20] *Id.*
[21] Fed. R. Evid. 702.
[22] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).
[23] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151–53 (1999).

testimony bears the burden of establishing, by a preponderance of the evidence, that "(1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable."[24]

While an expert witness is permitted to give his opinions on an "ultimate issue" of fact, assuming he is qualified to do so, he is not permitted to make credibility determinations or offer conclusions of law.[25] As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact.[26] Thus, "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"[27] The Court is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the opinion is reliable.[28] "It is the role of the adversarial system, not the court, to highlight weak evidence."[29]

## I. OSHA Regulations

Genesis seeks to exclude Tylawsky's testimony with respect to these two opinions:

1. That the lack of a hinged access cover was in violation of: "Guarded by hinger floor opening cover equipped with standard railings or permanently attached 29 CFR § 1910.23(a)(3)."

---

[24] *Motio, Inc. v. BSP Software, LLC*, No. 4:12-CV-647, 2016 WL 105299, at *1 (E.D. Tex. Jan. 8, 2016) (citing *Daubert*, 509 U.S. at 590–91). *See also Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002); *AMW Sports, LLC v. State Farm Fire and Cas. Co.*, No. 10-651, 2012 WL 39380, at *1 (M.D. La. Jan. 9, 2012) ("Plaintiffs, the proponents of the expert evidence at issue, have the burden of demonstrating that their expert is qualified to testify in the field that he is offered and that his opinions are both reliable and relevant.").
[25] Fed. R. Evid. 704; *see also Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law . . . nor, may an expert go beyond the scope of his expertise in giving his opinion"); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("Fed. R. Evid. 704 abolished the per se rule against testimony regarding ultimate issues of fact. . . . Rule 704, however, does not open the door to all opinions.").
[26] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[27] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596).
[28] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[29] *Primrose*, 382 F.3d at 562.

2. That the alternative lack of a guard railing is in violation of: "Covers and guardrails – Shall be provided to protect workers from the hazards of open pits, tanks, vats, ditches, etc. 29 CFR § 1910.22(c)."[30]

Genesis argues testimony with respect to these opinions is unreliable, and therefore inadmissible under Federal Rule of Evidence 702, because "application of such OSHA regulations is improper in this case as the Barge was a United States Coast Guard inspected vessel."[31,32] According to Genesis, the Supreme Court ruled in *Chao v. Mallard Bay Drilling, Inc.*, a case examining whether OSHA had jurisdiction to issue citations for violations of the OSH ACT, that "the Coast Guard's regulations pre-empt OSHA's regulations with regard to inspected vessels."[33] Genesis further argues that cases from this district court, including *Francois v. Diamond Offshore Co.*,[34] and *Carbo v. Chet Morrison Servs., LLC*,[35] "have previously excluded expert testimony regarding inapplicable OSHA regulations when dealing with a Coast Guard inspected vessel."[36] Genesis further argues "29 C.F.R. §1915.2 provides that OSHA regulations do not apply to matters under the control of the Coast Guard, including the construction and maintenance of the vessel and its gear and equipment."[37]

Plaintiff argues the Supreme Court held in *Chao,* "pursuant to the Memorandum of Understanding (MOU) between OSHA and the U.S. Court Guard," that OSHA "may not

---

[30] R. Doc. 69-5 at 9.
[31] *Id.*
[32] Applying the U.S. Coast Guard regulations, Genesis argues "[t]he Barge at issue in this case was a tank barge classed by [American Bureau of Shipping ("ABS")] and inspected by the Coast Guard"; "the Coast Guard regulations and ABS class rules do not require hinged deck access covers"; and "both Coast Guard and ABS have inspected this Barge numerous times, including the hatch cover and area in question, and have found no deficiency regarding the hatch cover design." *Id.* at 6. U.S. Coast Guard regulations require a vessel to "be constructed, maintained, and operated so as to meet the highest classification, certification, rating, and inspection standards for vessels of the same age and type imposed by" one of several classification societies, including "the American Bureau of Shipping (ABS)." 46 CFR § 298.11(c).
[33] *Id.* at 5-6 (citing *Chao v. Mallard Bay Drilling, Inc.*, 534 U.S. 235, 122 S. Ct. 738, 743 (2002)).
[34] Civil Action No. 11–2956, 2013 WL 654635 (E.D. La. Feb. 21, 2013).
[35] Civil Action No. 12-3007, 2013 WL 5774948 (E.D. La. Oct. 24, 2013).
[36] R. Doc. 69-1 at 6.
[37] *Id.*

5

enforce the OSH Act with respect to the working conditions of *seamen* aboard inspected vessels."[38] Plaintiff points out that, unlike the facts in *Francois* and *Carbo*, "Plaintiff was not a seaman at the time of the occurrence in question," and, accordingly, the application of OSHA regulations is proper. Instead, Plaintiff posits the case at hand is more similar to *Willis v. Noble Drilling (US), Inc.*,[39] in which the Court of Appeal of Louisiana, Fifth Circuit, "found that OSHA regulations did apply to the occupational accident of a longshoreman on an inspected vessel."[40]

Plaintiff argues, in the alternative, "even if [OSHA] regulations do not apply to inspected vessels, it does not follow that these OSHA standards for safety cannot be consulted as a guide [in determining standards of care]."[41] Genesis replies: "plaintiff's argument that OSHA regulations may be consulted as a guide even if not applicable is not appropriate in this case given that this is a jury trial such that there is an increased risk that reference to inapplicable OSHA regulations will mislead/confuse the jurors and result in prejudice towards Genesis."[42]

The Court now considers whether OSHA standards may be enforced with respect to the working conditions of non-seamen on an inspected vehicle. The MOU signed by the Coast Guard and OSHA on March 17, 1983 implements § 4(b)(1) of the OSHA regulations,[43] which provides:

> Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies, and State agencies acting under section 2021 of Title 42, exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.[44]

---

[38] R. Doc. 86 at 5 (citing *Chao*, 122 S. Ct. 738).
[39] 105 So. 3d 828 (La. App. 5 Cir. 11/13/12).
[40] R. Doc. 86 at 4-5.
[41] R. Doc. 86 at 6 (citing *National Marine Service, Inc. v. Gulf Oil Co.*, 433 F. Supp. 913, 919 (E.D. La. 1977)).
[42] R. Doc. 101 at 3.
[43] 29 U.S.C. § 653(b)(1).
[44] *Id.*

The MOU states "the Coast Guard has issued comprehensive standards and regulations concerning the working conditions of seamen aboard inspected vessels. These comprehensive standards and regulations include extensive specific regulations governing the working conditions of seamen aboard inspected vessels."[45] In light of this, the MOU concludes the following regarding the authority of OSHA:

> Based on OSHA's interpretation of section 4(b)(1), and as a result of the Coast Guard's exercise of its authority, described above, OSHA has concluded that it may not enforce the OSH Act with respect to the working conditions of seamen aboard inspected vessels.[46]

Notably, the MOU facially gives the U.S. Coast Guard full authority to enforce its regulations with respect to the safety and health of *seamen* aboard inspected vessels, but does not do the same for non-seamen. Various OSH Review Commission (the "Commission") opinions and court decisions lend additional support to Plaintiff's argument that employers of non-seamen on inspected vehicles may be cited for OSHA violations. For instance, in *Secretary of Labor v. California Stevedore & Ballast Co.*, the Commission held an employer whose stevedores were discharging cargo from the hold of a ship was not entitled to § 4(b)(1) exemption from OSHA regulations.[47] The Commission addressed whether, under § 4(b)(1), "the Coast Guard has statutory authority to 'prescribe or enforce standards or regulations' applicable to the working conditions of longshoremen."[48] The Commission found the Coast Guard lacks the authority to enforce its regulations with respect to the working conditions of longshoremen: "the provisions

---

[45] "Authority To Prescribe and Enforce Standards or Regulations Affecting Occupational Safety and Health of Seamen Aboard Vessels Inspected and Certificated by the United States Coast Guard; Memorandum of Understanding," 48 FR 11365-01, 1983 WL 126057(F.R.) (Mar. 17, 1983).
[46] *Id.*
[47] 8 OSAHRC 811, OSHRC Docket No. 1132, 1974 WL 4153 (May 28, 1974).
[48] *Id.* at *1.

7

of the [Coast Guard] Shipping Code as they relate to occupational safety appear to apply to seamen as a class to the exclusion of longshoremen as a class."[49] In so holding, the Commission explained:

> Indeed, were this not the case there would have been no necessity to amend the Longshoremen's and Harbor Worker's Compensation Act so as to authorize the Secretary of Labor to promulgate and enforce safety standards relating to longshoring operations. Nor would there have been any necessity for Congress to adopt longshoring standards issued under the Compensation Act as occupational safety standards under section 4(b)(2) of this Act.[50]

Conversely, courts have found OSHA does not have authority to cite employers of seamen on inspected vessels for violations of OSHA regulations. In *Donovan v. Texaco, Inc.*, a case involving an incident predating the signing of the MOU, the Fifth Circuit considered whether § 11(c) of OSHA could be enforced against an employer of a "seaman."[51] The Court found under the language of § 4(b)(1), OSHA regulations do not apply to working conditions of seamen on vessels in navigation.[52] The Fifth Circuit explained: "Section 4(b)(1) [of OSHA] declares that '[n]othing in this Chapter shall apply to working conditions of employees with respect to which other federal agencies . . . exercise statutory authority . . .'"; "*with respect to seamen*[,] the Coast Guard is such an agency"; and, therefore, "[n]othing in OSHA shall apply to working conditions of seamen on vessels."[53]

The Second Circuit has taken the same approach, holding that OSHA may not enforce its regulations with respect to seamen on inspected vessels. In *Donovan v. Red*

---

[49] *Id.*
[50] *Id.*
[51] 720 F.2d 825 (5th Cir. 1983).
[52] *Id.* at 827.
[53] *Id.* (emphasis added).

8

*Star Marine Services, Inc.*, one of the issues presented was the meaning of "working conditions" as used in § 4(b)(1) of OSHA.[54] In dicta, the Second Circuit noted:

> In accordance with a "Memorandum of Understanding" signed by the Commandant of the Coast Guard and the Assistant Secretary for Occupational Safety and Health, Department of Labor, the Secretary has taken the position, that "the Coast Guard has issued comprehensive standards and regulations concerning the working conditions of seamen aboard inspected vessels," and that OSHA may not enforce its regulations *with respect to "seamen"* aboard inspected vessels.[55]

Plaintiff points out the Court of Appeal of Louisiana, Fifth Circuit has held in *Willis* that OSHA regulations do not apply to employers of seamen on an inspected vessel, but do apply to longshoremen:

> § L of OSHA Directive CPL 2–1.20,[56] which was in effect that the time of this incident, provided that, although the U.S. Coast Guard exercises full authority over the safety and health of seamen aboard 'inspected' vessels, OSHA may exercise its authority over employers, *other than those that only employ seamen*, for the working conditions on vessel within OSHA's geographical jurisdiction. 'OSHA requirements which remain enforceable on inspected vessels for employees other than seamen are . . . long shoring operations, . . . marine construction activities, . . . general working conditions not otherwise regulated, [and] . . . Identified recognized hazardous situations that are causing or are likely to cause death or serious physical harm."[57]

The Court finds OSHA may enforce its regulations against employers of non-seamen such as Plaintiff aboard inspected vessels. Tylawsky may testify that certain conditions on Genesis Barge 11103 violated OSHA regulations.

The Court notes, however, that Tylawsky may not testify regarding legal conclusions. "Federal Rule of Evidence 702 permits the district court to admit expert testimony that will assist the trier of fact in either understanding the evidence or

---

[54] 739 F.2d 774, 775 (2d Cir. 1984).
[55] *Id.* at 778 n.2 (emphasis added).
[56] OSHA Directive CPL 2-1.20 "provides current policy, information and guidance with respect to OSHA/U.S. Coast Guard authority over inspected vessels, commercial uninspected fishing vessels, and commercial uninspected vessels in accordance with Section 4(b)(1) of the OSH Act, 29 U.S.C. Section 653(b)(1)." OSHA Directive CPL 2-1.20 at Abstract-2.
[57] *Willis*, 105 So. 3d at 837 (quoting OSHA Directive CPL 02–1.20 § L(2)) (emphasis in original).

determining a fact in issue."[58] Federal Rule of Evidence 704 states that "[a]n opinion is not objectionable just because it embraces an ultimate issue."[59] "The rule was enacted to change the old view that the giving [of] an opinion on an ultimate issue would 'usurp the function' or 'invade the province' of the jury."[60] The rule, however, does not "open the door to all opinions,"[61] and neither Rule 702 nor Rule 704 "permits expert witnesses to offer conclusions of law."[62] "The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions."[63] "[T]he task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one," and requires district courts to exclude questions or answers from experts that "would supply the jury with no information other than the expert's view of how its verdict should read."[64]

The parties should anticipate that the Court will not admit expert testimony at trial that amounts to nothing more than a legal conclusion.[65] The Court offers the following guidance:

> The example given in the Advisory Committee Notes to Rule 704 is helpful. The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well as a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read. Moreover,

---

[58] *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001).
[59] Fed. R. Evid. 704.
[60] *Owen*, 698 F.2d at 240.
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *See Owen*, 698 F.2d at 240.

allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.[66]

In this case, for example, Tylawsky may not express an opinion that Genesis's failure to include a hinged hatch cover, in violation of OSHA regulations, constitutes negligence per se. However, Tylawsky may testify that the failure to provide a hinged hatch cover violated OSHA regulations and that Genesis's conduct in failing to provide a hinged hatch cover fell below the required standard of care.

## II.  Failure to Consider Depositions

Second, Genesis seeks to exclude Tylawsky's testimony that "the hatch cover design was defective, unreasonably dangerous, and rendered the vessel unfit for service because it lacked a hinge."[67] Genesis argues this testimony is unreliable, and therefore inadmissible under Federal Rule of Evidence 702, because Tylawsky "fails to consider any depositions, including that of plaintiff, in formulating his conclusory opinions."[68]

Plaintiff argues "as noted in his report, John Tylawsky performed an inspection of the particular barge aboard which the Plaintiff was injured" and "[h]is expert report contains photographs of the unhinged hatch cover in question, which were obtained during this inspection."[69] Therefore, Plaintiff argues, Tylawsky's opinions "are based on sufficient facts and data as well as Mr. Tylawsky's relevant educational background, experience, training, and expertise."[70]

The crux of Genesis's argument is Tylawsky's opinion is unreliable because he failed consider and rely on any depositions in formulating his opinion. However, Federal

---

[66] *Id.*
[67] R. Doc. 69-1 at 6.
[68] *Id.* at 5.
[69] R. Doc. 86 at 6.
[70] *Id.* at 7.

11

Rule of Evidence of 702 does not mandate that an expert consider depositions in forming his opinion. Instead, Rule 702 only requires an expert's testimony be "based upon sufficient facts or data."[71] This requires exclusion of opinions based on "'insufficient, erroneous information.'"[72] As Plaintiff argues, Tylawsky inspected the barge aboard which Plaintiff was allegedly injured, and during this inspection Tylawsky observed the access to the bilge area and the particular hatch cover involved in the incident at issue. Tylawsky's expert report contains photographs of the hatch cover obtained during this inspection. The Court concludes that Genesis's criticisms go to the weight of Tylawsky's testimony and not to its admissibility. Accordingly;

## CONCLUSION

Genesis's motion *in limine* with respect to the testimony of Tylawsky is **DENIED**.

**New Orleans, Louisiana, this 19th day of July, 2019.**

                                            **SUSIE MORGAN**
                              **UNITED STATES DISTRICT JUDGE**

---

[71] Fed. R. Evid. 702(b).
[72] *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (quoting *Paz v. Brush Engineered Materials, Inc.*, 482 F.3d 383, 389 (5th Cir. 2009)).