# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEVIN J. RHODES**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-746** |
| **GENESIS MARINE, LLC OF DELAWARE,**<br>    **Defendant** | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court is a Motion *in Limine*, filed by Defendant Genesis Marine, LLC of Delaware ("Genesis"), to exclude the proffered testimony of Defendant Bollinger Shipyards, LLC's ("Bollinger's) safety expert, Robert Borison.[1] Bollinger opposes this motion.[2] Genesis filed a reply.[3] For the reasons that follow, Genesis's motion is **DENIED**.

## BACKGROUND

Plaintiff Kevin Rhodes alleges he was injured on June 23, 2017 while working as a marine electrician for his employer, Complete Marine Services, LLP ("Complete Marine"), aboard the Genesis Barge 11103, which is owned by Defendant Genesis.[4] The parties agree Plaintiff is a longshoreman, not a seaman,[5] and the Genesis Barge 11103 is an inspected vessel.[6] At the time of the alleged incident, the Genesis Barge 11103 was undergoing repairs performed by Defendant Bollinger at Bollinger's dry dock facility in Amelia, Louisiana.[7] As part of the repair work, Genesis contracted with Complete Marine to install

---

[1] R. Doc. 71.
[2] R. Doc. 78.
[3] R. Doc. 94.
[4] R. Doc. 1. at ¶ III.
[5] R. Doc. 107 (Pre-trial Order) at 12 (Uncontested Material Facts) ("On June 23, 2017, Kevin Rhodes was a worker covered under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq,*.")
[6] *Compare* R. Doc. 69-1 at 5 (describing Genesis Barge 11103 as "United States Coast Guard inspected vessel") (citing R. Doc. 69-7, United States Coast Guard Certificate of Inspection dated February 2, 2015) *with* R. Doc. 86 at 4-6 (describing Genesis Barge 11103 as an "inspected vessel").
[7] R. Doc. 1. at ¶ III.

1

electrical systems related to a new ballast water treatment system.[8] Because the ballast water treatment system was to be installed below the deck of the barge, to perform his work Plaintiff had to descend a ladder to access the lower level of the barge.[9]

"In order to access and descend the ladder, Plaintiff had to remove a grated opening to enter the bilge of the barge. The opening consisted of a cut-off piece of the grating."[10] To go through the opening, Plaintiff had to place the piece of grating (hereinafter the "hatch cover") on the deck.[11] Only then could Plaintiff descend the ladder. Once he cleared the entrance, Plaintiff had to reposition the hatch cover over the access hole.[12] On the date of the incident, as Plaintiff attempted to reposition the hatch cover, "it got snagged on welding lead cables that were laid out across the walkway by employees of Defendant, Bollinger" and the hatch cover fell into the hole.[13] Plaintiff pushed himself back from the ladder to avoid being struck by the hatch cover.[14] Plaintiff fell off the ladder, sustaining various bodily injuries.[15] Plaintiff filed this action against Genesis and Bollinger on January 24, 2018, bringing "negligence" and "vessel negligence" causes of action against Genesis and a "negligence" cause of action against Bollinger.[16]

## **LAW AND ANALYSIS**

Genesis seeks to exclude Borison's proffered testimony that:

> The ladderway was unsafe in its construction and design because the hatch cover should have been hinged or should have either been protected by permanent or temporary guardrails or by a temporary cover.[17]

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *See* R. Doc. 1.
[17] R. Doc. 71-1 at 2.

Genesis argues this testimony is unreliable under Federal Rule of Evidence 702 because "Borison is being offered as a safety expert, not a marine engineer/naval architect" and Borison "completely disregards" the testimony of Plaintiff, Robert Schenkenberg, and Townsend Hardee in formulating his opinion.[18] Bollinger argues: "Borison is not being offered as an expert in marine engineering or naval architecture, nor is such a qualification a necessary prerequisite for the opinions offered in his report."[19]

Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[20]

Courts, as "gatekeepers," are tasked with making a preliminary assessment whether expert testimony is both reliable and relevant.[21] The Court has broad latitude in making such expert testimony determinations.[22] The party seeking to offer expert testimony bears the burden of establishing, by a preponderance of the evidence, that "(1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable."[23]

---

[18] *Id.* at 4.
[19] R. Doc. 78 at 5.
[20] Fed. R. Evid. 702.
[21] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).
[22] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151–53 (1999).
[23] *Motio, Inc. v. BSP Software, LLC*, No. 4:12-CV-647, 2016 WL 105299, at *1 (E.D. Tex. Jan. 8, 2016) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590–91 (1993)). *See also Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002); *AMW Sports, LLC v. State Farm Fire and Cas. Co.*, No. 10-651, 2012 WL 39380, at *1 (M.D. La. Jan. 9, 2012) ("Plaintiffs, the proponents of the expert evidence at issue, have the burden of demonstrating that their expert is qualified to testify in the field that he is offered and that his opinions are both reliable and relevant.").

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact.[24] Thus, "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"[25] The Court is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the opinion is reliable.[26] "It is the role of the adversarial system, not the court, to highlight weak evidence."[27]

In *Montgomery v. Parker Towing Co.*, Judge Africk addressed a similar challenge to Borison's expert testimony as the ones Genesis raises in this case.[28] There, Judge Africk denied a vessel owner's motion *in limine* to exclude safety expert Borison's opinion on the causes of an accident involving a crew member whose foot was "was crushed between a hydraulic cylinder and a stop point.[29] Borison listed in the report several preventative measures, including: "(1) installing guards over the mechanism that injured plaintiff; (2) installing a raised deck covered with grating; (3) installing a guard rail, gates, warnings, and presence sensors; and (4) instituting a lock out/tag out procedure."[30] The vessel owner argued: "Borison is not qualified to give expert testimony as to the engine room operations and design because Borison is not a naval architect nor a mechanical engineer."[31] Judge Africk held: "Borison is not seeking to be qualified as a naval architect

---

[24] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[25] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596).
[26] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[27] *Primrose*, 382 F.3d at 562.
[28] No. CIV. A. 07-3218, 2008 WL 559569 (E.D. La. Feb. 26, 2008).
[29] *Id.* at *1.
[30] *Id.*
[31] *Id.* at *2.

4

or a mechanical engineer, but rather as a safety expert, for which he has sufficient qualifications" and "[t]he strength of Borison's credentials goes to the weight of his testimony and not its admissibility."[32]

In this case, Borison is not qualified as an expert in marine engineering or naval architecture, and accordingly will not be allowed to testify with respect to the design or manufacture of the hatch cover. However, Bollinger is offering Borison as a safety expert, not as an expert in marine engineering or naval architecture. Borison may properly testify as a safety expert.

## CONCLUSION

Genesis's motion *in limine* is **DENIED**.

**IT IS SO ORDERED**.

**New Orleans, Louisiana, this 19th day of July, 2019.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[32] *Id.* (citing *Curry v. ENSCO Offshore Co.*, 54 Fed. App'x 407 (5th Cir. 2002) (holding that a safety director was qualified to testify as an expert in marine safety, despite defendant's arguments that the expert was not qualified as a biomechanical engineer or any other relevant discipline); *Williams v. Warren*, 253 F.3d 700 (5th Cir. 2001) (holding that an expert was qualified to discuss broken bones even though he was not an orthopedic surgeon and that the strength of his "credentials go to the weight, not the admissibility" of his testimony)).